IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEO C. WATKINS and <br> RENEE C. WATKINS, <br><br> Plaintiffs, <br><br> v. <br><br> THE CIT GROUP/CONSUMER FINANCE, <br> INC., *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No.: 14 cv 02164 <br> ) <br> ) Judge Robert M. Dow, Jr. <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss filed by Defendants CitiGroup Global Markets Realty, Corp. (sued as "CitiGroup Global Markets Realty Group"), CitiGroup Mortgage Loan Trust, Inc., and CitiMortgage, Inc. (collectively, "Citi Defendants"). For the reasons set forth below, the Court grants Citi Defendants' motion to dismiss [17].

**I.     Background[1]**

This lawsuit arises out of Plaintiffs' purchase of a mortgage note and subsequent foreclosure proceedings brought against Plaintiffs on July 12, 2013 in the Circuit Court of Cook County, Illinois, Chancery Division.[2] On January 26, 2007, Plaintiffs purchased a mortgage note from Defendant CIT Group ("CIT") in connection with property located at 8052 South Bennett Avenue, Chicago, Illinois 60617. Plaintiffs allege that the note was then securitized pursuant to

---

[1]    For the purposes of Defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2]    The Court takes judicial notice of the record in the state foreclosure proceeding. A court may take judicial notice of matters of public record on a motion to dismiss. *Johnson v. City of Kankakee, Ill.*, 397 F. App'x 238, 240 (7th Cir. 2010); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

a Pooling and Servicing Agreement ("PSA") between various banks, servicers and a trustee. They allege that under a typical PSA, a homeowner's note is transferred from an originator to a sponsor, from a sponsor to a depositor, and from a depositor to a trustee. During this process, a note is typically separated from a mortgage. The mortgage is transferred to Defendant Mortgage Electronic Registrations System ("MERS"), which holds the mortgage on behalf of whoever owns the note. The complaint alleges that Defendant CIT is the originator; Defendant CitiGroup Global Markets Realty is the sponsor; Defendant CitiGroup Mortgage Loan Trust is the depositor; Defendant U.S. Bank National Association is the trustee; and Defendant CitiMortgage is the servicer of the trust.

A. State Foreclosure Proceeding

On July 12, 2013, Defendant CitiMortgage filed the foreclosure proceeding against Plaintiffs. The alias summons, served on September 7, 2013, stated that Plaintiffs had 30 days to answer or otherwise plead, or else face a potential default judgment; that Plaintiffs might be able to save their home and that they should not ignore the summons; that CitiMortgage did not wish to foreclose and that there might be workout options; and that Plaintiffs could ask the judge to refer their case to the court's free Foreclosure Mediation Program. Plaintiffs failed to file an appearance, answer or otherwise plead within the required period. On February 6, 2014, CitiMortgage moved for an order of default judgment. They also moved to substitute U.S. Bank as plaintiff. On February 25, 2014, the judge entered a default call order, ordering Plaintiffs to file an answer and appearance by March 25, 2014, and they again failed to do so. On April 22, 2014, the court substituted U.S. Bank as plaintiff and entered a Judgment of Foreclosure and Order of Sale in favor of U.S. Bank. U.S. Bank continued under the representation of CitiMortgage's counsel. On July 23, 2014, Plaintiffs moved to vacate the order of judgment,

2

generically stating that the plaintiffs had committed a fraud upon the court without supporting their motion with any factual explanation. The court denied their motion, entering an Order Confirming the Sale and an Order of Possession on November 17, 2014.

B.  **Federal Complaint**

On May 29, 2014, Plaintiffs filed a ten-count complaint alleging and/or praying for: (1) wrongful foreclosure based on an alleged lack of standing; (2) fraudulent concealment of the fact of securitization; (3) fraudulent inducement; (4) intentional infliction of emotional distress for fraudulently foreclosing on Plaintiffs' property; (5) slander of title; (6) quiet title; (7) declaratory judgment that Defendants lack standing to foreclose; (8) violation of the Truth in Lending Act ("TILA"), as amended by the Home Owners Equity Protection Act ("HOEPA"); (9) violation of the Real Estate Settlement Procedures Act ("RESPA"); and (10) rescission of the loan based on the violations alleged in the previous counts.

Citi Defendants moved to dismiss on July 18, 2014 [17], and Plaintiffs did not file a response. Citi Defendants then filed a reply brief [21]. On January 1, 2015, the Court entered an order [22], giving Plaintiffs until February 12, 2015 to show cause as to why the Court should not dismiss their claims on one or more of the grounds argued in Citi Defendants' motion to dismiss and reply brief. Plaintiffs did not respond. In fact, Plaintiffs have not filed anything with the Court since filing their complaint, and since the state foreclosure proceedings began, they have filed nothing in either proceeding except an unsupported motion to vacate the circuit court's entry of a default judgment and this complaint.

II.  **Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d

1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

To state a claim of fraud, a plaintiff must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). More specifically, a plaintiff must allege "the identity of the person who made the misrepresentation,

4

the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citations and internal quotation marks omitted). In other words, a complaint must allege the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (citation and internal quotation marks omitted).

### III. Analysis

#### A. Forfeiture

Plaintiffs have forfeited their claims by failing to respond to Defendants' motion to dismiss. See *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("by failing to respond responsively to the motion to dismiss * * * she forfeited her right to continue litigating her claim"). Nevertheless, to aid the parties, *pro se* Plaintiffs in particular, the Court explains additional grounds on which it dismisses all counts.

#### B. *Res Judicata*

The Court dismisses Counts I through VIII and X against CitiMortgage as barred under *res judicata*. *Res judicata* is an affirmative defense but may be considered under Rule 12(b)(6) where plaintiffs plead themselves out of court. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). Under the Full Faith and Credit Act, federal courts give state court judgments the same preclusive effect they would have in state court. 28 U.S.C. § 1738; *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). In Illinois, a final judgment on the merits rendered by a court of competent jurisdiction bars a subsequent suit between the parties involving the same cause of action. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 959 N.E.2d

5

1133, 1148 (Ill. 2011). *Res judicata* precludes subsequent litigation of not only issues that were actually decided but also issues that could have been decided in the earlier suit, *id.*; a plaintiff may not raise a claim that could have been raised as a defense or counterclaim in a previous action if successful prosecution of the second action would nullify the initial judgment or impair rights established in the initial action. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir. 1986); *Lehman v. Cont'l Health Care, Ltd.*, 240 Ill. App. 3d 795, 803, 608 N.E.2d 303, 309 (Ill. App. Ct. 1992). In order for *res judicata* to apply, there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of parties, or their privies; and (3) an identity of cause of action. *See id.*

Each of these requirements is satisfied with respect to CitiMortgage. The first requirement is satisfied because the circuit court's order confirming the foreclosure sale was a final judgment on the merits. See *EMC Mortgage Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012); *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 919 n. 5 (7th Cir. 2003) (collecting Illinois cases finding that an order confirming a foreclosure sale is a final judgment on the merits). The fact that the circuit court entered a default judgment against Plaintiffs does not alter the analysis; in Illinois, a default judgment is a judgment on the merits with preclusive effect. *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 957 (7th Cir. 1997) (citing *Hous. Auth. for La Salle Cnty. v. Young Men's Christian Ass'n of Ottawa*, 461 N.E.2d 959, 963 (Ill. App. Ct. 1984); *Illinois State Bar Ass'n Mut. Ins. Co. v. Lobatos-Syperek*, 2011 WL 10069611, at *3 (Ill. App. Ct. Mar. 25, 2011).

The second requirement is satisfied because U.S. Bank and CitiMortgage acted in privity. "With respect to the doctrine of *res judicata,* there is no generally prevailing definition of 'privity' which can automatically be applied to all cases; that determination requires a careful

examination into the circumstances of each case." *Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 94 (Ill. App. Ct. 2004). However, privity generally exists "between parties who adequately represent the same legal interests." *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1080 (7th Cir. 2011) (quoting *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992)). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Chicago Title Land Trust Co.*, 664 F.3d at 1080 (quoting *Burris*, 602 N.E.2d at 825). "A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty." *City of Rockford v. Unit Six of Policemen's Benevolent & Protective Ass'n of Illinois*, 840 N.E.2d 1283, 1289 (Ill. App. Ct. 2005) (quoting *Purmal*, 820 N.E.2d at 95).

The circuit court record does not indicate why CitiMortgage initiated the foreclosure proceeding and why U.S. Bank was substituted as plaintiff, nor do the parties explain the substitution in their federal filings. However, given that (1) CitiMortgage originally filed the foreclosure action, (2) servicers frequently initiate foreclosure proceedings on behalf of creditors pursuant to their servicing agreements, see, *e.g.*, *Bank of Am. Nat. Ass'n v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 4 (Ill. App. Ct. 2012), and (3) CitiMortgage's lawyer continued to represent U.S. Bank post-substitution, it appears that CitiMortgage initiated the foreclosure suit on U.S. Bank's behalf. This relationship, in which CitiMortgage initiated foreclosure as U.S. Bank's representative, creates privity. In any event, Plaintiffs have forfeited any arguments to the contrary by failing to contest privity. See *Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir. 2007).

The third requirement—identity of cause of action—also is satisfied. To evaluate whether an identity of causes of action exists, Illinois courts use a transactional test, under which separate claims are considered the same cause of action if they arise from "a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (Ill. 1998). The present claim and the previous foreclosure proceeding arise from the same set of facts, starting with the loan's origination and ending in foreclosure. More specifically, Count I's claim of wrongful foreclosure, Count III's claim of fraudulent foreclosure on a property in which Defendants allegedly have no interest, Count IV's claim of intentional infliction of emotional distress arising from the foreclosure, Count V's claim of slander of title, Count VI's claim of quiet title, Count VII's prayer for declaratory relief that Defendants have no authority to foreclose, and Count X's prayer for rescission all rely on facts relating to Defendants' alleged failure to perfect their security interest and their resulting lack of standing to foreclose. Plaintiffs could have raised these counts in the form of defenses or counterclaims during the foreclosure proceedings, but they did not.

Counts II's claim of fraud and Count VIII's claim of a TILA/HOEPA violation also relate to facts surrounding the origination of the loan. To the extent that these claims are viable against U.S. Bank as an assignee of the loan (or CitiMortgage suing on its behalf), these claims could have been raised as defenses in the state foreclosure action. See, *e.g.*, *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986) (Plaintiffs who failed to allege that their mortgage was fraudulently obtained as a defense to foreclosure were barred from later claiming fraud in federal court under *res judicata*); *Farm Credit Bank of St. Louis v. Isringhausen*, 569 N.E.2d 235, 237 (Ill. App. Ct. 1991) (fraud is a defense to action on a note); *Wells Fargo Bank, N.A. v. Terry*, 928 N.E.2d 540, 543-45 (Ill. App. Ct. 2010) (violations of TILA may be raised

8

within three years of obtaining a loan as a rescission claim in recoupment brought defensively in a foreclosure action); *U.S. Bank Nat. Ass'n v. Manzo*, 960 N.E.2d 1238, 1249 (Ill. App. Ct. 2011) (same).

Having found that all three requirements are satisfied with respect to Counts I through VIII and X, the Court concludes that these claims against CitiMortgage are barred under *res judicata*.[3] Put into less complicated language, the point is this. Plaintiffs should have contested the foreclosure in circuit court. Losing a home is a frustrating and difficult process, but, even so, the law does not allow Plaintiffs to argue now what they should have argued then.

The same is likely true of Count IX, which alleges a RESPA violation. Count IX appears to contend that someone—it is unclear who exactly—failed to disclose key terms of the loan to Plaintiffs in some of the settlement documents. Based on the Court's review of Illinois case law, it appears that a RESPA violation of the kind alleged here could give rise to a valid defense against foreclosure.[4] However, given the unestablished nature of this defense under Illinois law, and given that the Court can conceive of circumstances where successful RESPA claim might

---

[3] The Court notes that the same analysis appears to apply to U.S. Bank as well.

[4] In *Bankers Life Co. v. Denton*, 458 N.E.2d 203, 204 (Ill. App. Ct. 1983), the defendants in a foreclosure action alleged two affirmative defenses, both based on noncompliance with HUD requirements issued under the National Housing Act ("NHA"). An Illinois Appellate Court held that a mortgagee's noncompliance with HUD regulations can be an affirmative defense to a foreclosure action involving a HUD-insured mortgage. *Bankers Life Co.*, 458 N.E.2d at 205. The Appellate Court noted that the primary purpose of the NHA was to "assist in providing a decent home and a suitable living environment for every American family" and that the primary beneficiaries of the act were homeowners with HUD-insured mortgages. *Id.* It reasoned that in light of this purpose, mortgagors with HUD-insured loans should be able to allege noncompliance with HUD regulations as an affirmative defense to foreclosure. *Id.* See *Hayes v. M & T Mortgage Corp.*, 906 N.E.2d 638, 642 (Ill. App. Ct. 2009) (noting the continued viability of *Bankers Life Co.*'s holding twenty years later).

The court's reasoning in *Bankers Life Co.* appears equally applicable in the context of RESPA violations. The primary purpose of RESPA is to insure that consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a) (Congressional findings). Given that the primary beneficiaries of RESPA are homeowners, it appears that Illinois law could recognize RESPA violations of the kind alleged here.

not nullify a previous foreclosure judgment, the Court does not dismiss this count against CitiMortgage under *res judicata*, dismissing it instead under Rule 12(b)(6), as explained below.

Citi Defendants argue that the claims against the remaining two Citi Defendants are also barred under *res judicata.* The Court disagrees based on a lack of privity. As the servicer of the trust, CitiMortgage presumably acted on the trust's behalf. The other two Citi Defendants, however, were former creditors, who bought and sold the note before it arrived in the trust; CitiGroup Global Markets Realty allegedly bought the note from the originator and then sold it to CitiGroup Mortgage Loan Trust, which then sold it to the trust. As former owners of an allegedly defected note and security interest, their interests could be misaligned with those of U.S. Bank in litigation. Accordingly, the Court does not dismiss any counts brought against CitiGroup Global Markets Realty or CitiGroup Mortgage Loan Trust under the doctrine of *res judicata.*

### C. Rules 9(b) and 12(b)(6)

#### 1. Federal Claims (Counts VIII and IX)

The Court dismisses the federal claims alleged in Counts VIII and IX under Rule 12(b)(6). Count VIII alleges that Defendants failed to provide Plaintiff with "accurate material disclosures required under TILA/HOEPA" and that they failed to account for "the intent of the State Legislature in approving this statute" when making disclosures. Compl. at 23. TILA and HOEPA create a variety of disclosure and counseling requirements based on the type of loan and the type of borrower. They also create two different standards of liability for assignees. Generally, assignees are liable where a violation appears on the face of the disclosure statement, and the assignment was voluntary. 15 U.S.C. § 1641(a) & (e); see *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 936 (7th Cir. 1998) ("[Plaintiffs] must allege that the violation was 'apparent

on the face' of the assigned documents). In the case of certain qualifying high-cost mortgages, however, HOEPA expands assignee liability to "all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage," unless the assignee could not determine, based on the documentation, that the mortgage was a high-cost mortgage governed by HOEPA. 15 U.S.C. § 1641(d)(1). The purpose of this expansion is to "force the high cost mortgage market to police itself." *Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F. Supp. 2d 50, 55 (D.D.C. 2002); *Bryant v. Mortgage Capital Res. Corp.*, 197 F. Supp. 2d 1357, 1359 (N.D. Ga. 2002); *Bibbs v. Sec. Atl. Mortgage Co.*, 2010 WL 3505176, at *6 (E.D. Pa. Sept. 1, 2010); S. Rep. No. 103–169, at 28 (1993), reprinted in 1994 U.S.C.C.A.N. 1881, 1912, and 1993 WL 444316 (HOEPA Leg. Hist.).[5]

Plaintiffs fail to allege key facts about the kind of loan that they purchased, the relevant disclosure requirements under TILA and HOEPA, and how the originator violated those requirements. They do not allege that (let alone how) any violations appeared on the face of the disclosure, nor do they allege that their mortgage qualified as a high-cost HOEPA mortgage, expanding the scope of assignee liability. All they allege is a general failure to provide "accurate material disclosures," presumably by the originator, and a failure by Defendants to carry out Congress's legislative intent. Given the complex array of duties that originators, let alone assignees, owe to borrowers under TILA and HOEPA, these allegations are insufficient to put Defendants on notice of the nature of the claim against them. Plaintiffs have had almost nine

---

[5] The Congressional record explains that

> [b]y imposing assignee liability, the Committee seeks to ensure that the High Cost Mortgage market polices itself. Unscrupulous lenders were limited in the past by their own capital resources. Today, however, with loans sold on a regular basis, one unscrupulous player can create havoc in a community by selling loans as fast as they are originated. Providing assignee liability will halt the flow of capital to such lenders.

S. Rep. 103-169, 28, 1994 U.S.C.C.A.N. 1881, 1912.

months to clarify these facts in an amended complaint and two opportunities to clarify in the form of a response brief, but have not done so. Accordingly, the Court dismisses Count VIII under Rule 12(b)(6).

The Court also dismisses Count IX's RESPA claim under Rule 12(b)(6). The complaint alleges that Defendants violated RESPA in three main ways. First, it alleges that the "interest and income that Defendants have gained is disproportionate to the situation Plaintiff (*sic*) find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer (*sic*) financially as a result of the loan product sold to Plaintiff." Compl. at 25. Second, it alleges that "No separate fee agreements, regarding the use of CIT / CONSUMER Cost of Savings' (*sic*) as the index for the basis of this loan, Disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided." *Id.* Third, it alleges that "Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving." *Id.*

RESPA is a consumer protection statute that regulates closing costs and the real estate settlement process. See 12 U.S.C. § 2601 (Congressional findings). Congress enacted the statute to insure that consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). The statute and corresponding regulations impose a complex set of duties on settlement agents, servicers and lenders.

Plaintiffs' first and third allegations are insufficiently specific to give Defendants sufficient notice of the RESPA claims against them. To the extent that they complain of general

unfairness, they do not state a claim under RESPA. The second allegation, which provides more factual detail, does not identify the relevant provision of RESPA or the relevant regulation that Citi Defendants allegedly violated. Based on the Court's review of the various requirements under RESPA, however, it appears that Plaintiffs may contend that the originators or settlement agents failed to disclose key terms of Plaintiffs' loan in the HUD-1 settlement statements and/or Good Faith Estimates, violating Sections 4 and/or 5 of RESPA. See 24 C.F.R. §§ 3500.8, 3500.7, replaced by 12 C.F.R. §§ 1024.8, 1024.7; 12 U.S.C. § 2603-04. Assuming so, the question then is whether Plaintiffs state a claim against Citi Defendants as assignees. The scope of Citi Defendants' potential liability as assignees is unclear based on insufficient factual allegations about the nature of the loan and unsettled interpretations of the relevant law. See *Bibbs v. Sec. Atl. Mortgage Co.*, 2010 WL 3505176, at \*6-\*9 (E.D. Pa. Sept. 1, 2010) (collecting cases suggesting that HOEPA's assignee liability provision may expand assignee liability for violations of not only HOEPA but also RESPA and other laws). In any event, Plaintiff makes no factual allegations explaining why Citi Defendants should be liable as assignees, failing to state a claim of assignee liability. Again, Plaintiffs have had almost nine months to clarify their allegations in an amended complaint and two opportunities to clarify in the form of a response brief, but they did not avail themselves of these opportunities. Accordingly, Court dismisses Count IX against Citi Defendants.[6]

---

[6] Moreover, Plaintiffs may well lack a private right of action under Sections 4 and 5 of RESPA. The Seventh Circuit has found no private right of action under Section 10 of RESPA, see *Allison v. Liberty Sav.*, 695 F.2d 1086, 1087-91 (7th Cir. 1982), and courts have found *Allison*'s rationale applicable to Sections 4 and 5. See, *e.g.*, *Bloom v. Martin*, 865 F. Supp. 1377, 1383-85 (N.D. Cal. 1994) (finding no private right of action under Section 4); *Chow v. Aegis Mortgage Corp.*, 286 F. Supp. 2d 956, 962 (N.D. Ill. 2003) (finding no private right of action under Section 5). See also *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367 (11th Cir. 1997) (finding no private right of action under Section 5).

## 2. Remaining Claims

Having dismissed the federal claims, the Court now addresses whether to exercise jurisdiction over the remaining claims. Under 28 U.S.C. § 1367, a district court has supplemental jurisdiction over state claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Animated by the principle of comity, the Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). See also *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Exceptions to the general rule exist "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994) (internal quotation marks omitted). The Court exercises jurisdiction under the third exception and dismisses the remaining claims under Rule 12(b)(6).

Counts I and IV through VII fail to state a claim against CitiGroup Global Markets Realty and CitiGroup Mortgage Loan Trust under Rule 12(b)(6). Count I alleges wrongful foreclosure, contending that Defendants lacked the right to pursue foreclosure because defects in

the securitization process created defects in the asserted security interest. Count IV alleges intentional infliction of emotional distress, contending that Defendants misrepresented their right to foreclose and then initiated foreclosure proceedings with the intent of inflicting so much emotional distress on Plaintiffs that Plaintiffs would be unable to defend themselves in court. Count V alleges slander of title, alleging that Defendants disparaged Plaintiffs' title by publishing documents evidencing the commencement of judicial foreclosure although they lacked the right to foreclose. Count VI brings an action to quiet title based on Defendants' asserted security interest in Plaintiffs' property. Lastly, Count VII prays for declaratory relief finding that Defendants lack the authority to foreclose upon and sell the property. All of these counts fail to state a claim against CitiGroup Global Markets Realty and CitiGroup Mortgage Loan Trust. Neither of them initiated the foreclosure proceedings, nor do Plaintiffs indicate that they were involved in them.

Counts II fails to state a claim against CitiGroup Global Markets Realty and CitiGroup Mortgage Loan Trust under Rules 9(b) and 12(b)(6). This count alleges fraud, contending that Defendants concealed the fact that the loans were securitized, which adversely affected the character of Plaintiffs' loan; it alleges that but for this non-disclosure, Plaintiffs would not have accepted the loan. This count is not pled with the degree of specificity required under Rule 9(b) in that it does not explain adequately who failed to make the disclosures or why securitization was material to Plaintiffs. It additionally fails to state a claim under Rule 12(b)(6) because it does not allege any factual basis on which Citi Defendants may be liable as assignees of the allegedly fraudulent loan.

Count III also fails to state a claim under Rules 9(b) and 12(b)(6). This count appears to allege two theories of fraud in the inducement, given the Court's understanding of the factual

allegations. First, it alleges that Defendants intentionally misrepresented to Plaintiffs that they had the right to foreclose on the property and that Defendants therefore fraudulently foreclosed on the property. Second, it alleges that Defendants failed to disclose the material terms of the note to Plaintiffs, inducing them to enter the loan. The first theory does not state a claim because it fails to plead the elements of fraud in the inducement. To plead fraud in the inducement, a plaintiff must plead specific facts establishing: (1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance. *Benson v. Stafford*, 941 N.E.2d 386, 405 (Ill. App. Ct. 2010); *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). Plaintiffs' first theory lacks the fourth element. Plaintiffs allege that Defendants falsely represented the nature of their security interest in Plaintiffs' house, but Plaintiffs do not allege that this false representation induced *Plaintiffs* to take any action. Rather, it alleges that *Defendants* subsequently initiated foreclosure. Plaintiffs' second theory of fraud fails under Rules 9(b) and 12(b)(6) because it fails to explain who failed to disclose what material terms. It also fails under Rule 12(b)(6) because it fails to allege any factual basis supporting CitiGroup Global Markets Realty's and CitiGroup Mortgage Loan Trust's liability as assignees.

Lastly, Count X prays for rescission based on violations of counts I through IX. Because these counts fail, the Court dismisses Count X as well. Count X's prayer for rescission under TILA is also barred by the three-year statute of repose, as more than three years have passed since Plaintiffs' loan allegedly closed. See *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008); *Laseter v.*

*ClimateGuard Design & Installation, LLC*, 931 F. Supp. 2d 862, 865 (N.D. Ill. 2013).[7]

### III. Conclusion

For the reasons stated above, the Court grants Citi Defendants' motion to dismiss [17] in its entirety and dismisses all of Plaintiffs' claims against Citi Defendants. This case is set for status on March 10, 2015 at 9:00 a.m. If Plaintiffs do not appear—which appears to be a distinct possibility given their failure to respond either to Citi Defendants' motion to dismiss or the Court's show cause order—the Court will also dismiss Plaintiffs' remaining claims for failure to prosecute. The Court will then enter a final judgment for all Defendants and against Plaintiffs on all claims. If Plaintiffs do appear at the March 10 status hearing, the Court will inquire as to whether Plaintiffs believe they can cure any of the deficiencies identified above. If so, the Court may allow Plaintiffs to file a motion for leave to file an amended complaint.

Dated: February 25, 2015

Robert M. Dow, Jr.
United States District Judge

---

[7] A statute of repose is an affirmative defense and need not be anticipated in a complaint. See *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). However, dismissal under Rule 12(b)(6) is appropriate where a complaint pleads facts establishing that a claim is time-barred. *Id.*